```
                                        FILED
                              CLERK, U.S. DISTRICT COURT

                                    JAN 2 7 2011

                              CENTRAL DISTRICT OF CALIFORNIA
                              BY _____ DEPUTY
```

1

2

3

4

5

6

7

8                     **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   HUBERT PETRICH,                 )   NO. ED CV 10-1661-DSF(E)
                                     )
12                  Petitioner,       )
                                     )
13        v.                          )   ORDER ADOPTING FINDINGS,
                                     )
14   JOHN MARSHALL, Warden, et al.,   )   CONCLUSIONS AND RECOMMENDATIONS
                                     )
15                  Respondent.       )   OF UNITED STATES MAGISTRATE JUDGE
                                     )
16   _____)

17

18        Pursuant to 28 U.S.C. section 636, the Court has reviewed the

19   Petition, all of the records herein and the attached Report and

20   Recommendation of United States Magistrate Judge.  Petitioner's

21   challenge to the sufficiency of the evidence to support the California

22   Board of Parole Hearings' unsuitability finding fails as a matter of

23   law.  See Swarthout v. Cooke, 2011 WL 197627 (U.S. Jan. 24, 2011)

24   ("Swarthout").  The Court approves and adopts the Magistrate Judge's

25   recommendation that the Petition be denied and dismissed with

26   prejudice, and the Court also approves and adopts the Magistrate

27   Judge's Report and Recommendation to the extent not inconsistent with

28   the United States Supreme Court's subsequent opinion in Swarthout.

1    IT IS ORDERED that Judgment be entered denying and dismissing the
2 Petition with prejudice.

3

4    IT IS FURTHER ORDERED that the Clerk serve copies of this Order,
5 the Magistrate Judge's Report and Recommendation and the Judgment
6 herein by United States mail on Petitioner and counsel for Respondent.

7

8    LET JUDGMENT BE ENTERED ACCORDINGLY.

9

10    DATED: _____1/27_____, 2011.

11

12

13    _____
                    DALE S. FISCHER
14            UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **CENTRAL DISTRICT OF CALIFORNIA**
10
11   HUBERT PETRICH,                )    NO. ED CV 10-1661-DSF(E)
                                     )
12              Petitioner,          )
                                     )    REPORT AND RECOMMENDATION OF
13      v.                           )
                                     )    UNITED STATES MAGISTRATE JUDGE
14   JOHN MARSHALL, Warden,          )
     et al.,                         )
15                                   )
                                     )
16              Respondent.          )
                                     )
17   _____)
18
19        This Report and Recommendation is submitted to the Honorable
20   Dale S. Fischer, United States District Judge, pursuant to 28 U.S.C.
21   section 636 and General Order 05-07 of the United States District
22   Court for the Central District of California.
23
24                         **PROCEEDINGS**
25
26        Petitioner filed a "Petition for Writ of Habeas Corpus By a
27   Person in State Custody" on October 28, 2010.  The Petition challenges
28   a June 10, 2009 decision of the California Board of Parole Hearings

1  ("Board") finding Petitioner unsuitable for parole.  Respondent filed

2  an Answer and lodged certain documents on November 29, 2010.

3  Petitioner filed a Reply on December 8, 2010.

4

5                              **BACKGROUND**

6

7       In 1980, Petitioner received a sentence of twenty-five years to

8  life for first degree murder (Petition at 2).  Petitioner appeared

9  before the Board on June 10, 2009 for a subsequent parole hearing

10 ("Subsequent Parole Consideration Hearing" transcript attached as

11 Exhibit B to Lodgment 7) ("H.T.").  The Board denied parole for ten

12 years (H.T. 65-75).  Petitioner filed a habeas corpus petition in the

13 San Bernardino County Superior Court, which that court denied in a

14 reasoned order (Lodgments 1 and 4).  Petitioner filed a habeas corpus

15 petition in the California Court of Appeal, which that court denied

16 summarily (Lodgments 5 and 6).  Petitioner filed a habeas corpus

17 petition in the California Supreme Court, which that court also denied

18 summarily (Lodgments 7 and 8).

19

20                    **SUMMARY OF PAROLE PROCEEDINGS**

21

22 **I.    The Hearing**

23

24       Petitioner appeared at the hearing, represented by counsel, but

25 Petitioner declined to talk about the commitment offense (H.T. 2, 12).

26 The presiding commissioner read into the record the circumstances of

27 the commitment offense, as reported by the police, the autopsy

28 protocol physician, and the probation officer:

                                  2

1    On August 20, 1980 a police unit was detailed to the
2    Holiday Inn in Ontario regarding a dead body which had been
3    discovered by one of the hotel cleaning personnel.  A maid
4    employed by the hotel, was engaged in her housekeeping
5    duties early in the day and had entered room 259 when she
6    observed what she believed to be a naked female sleeping on
7    the bed.  Approximately five hours later she returned a
8    second time and observed the body in the same position.
9    Feeling that something was amiss she closed the door and
10   proceeded to call her supervisor.  Eventually police were
11   contacted and investigation initiated.  At the time of
12   initial police contact the victim was observed to be a
13   female in [sic] approximately in her mid 30s.  Post mortem
14   levity had set in and there were what appeared to bruises or
15   indentations on her ankles and wrists indicating that she
16   had been tied, although there were no cords present.  The
17   body's position was described as approximating a wrist lock
18   behind the back position.  A substance appearing to be sperm
19   was found on the bedspread and the victim's genital area.
20   Her head was on its left side and dried blood was observable
21   on her chin and neck.  There were two pillows one on top of
22   the other covering the victim's head.  The pillows had two
23   small caliber entry holes in them.  An inspection of the
24   room indicated that two lights in the room had had lengths
25   of electrical cord cut from them.  A hanging lamp was
26   missing approximately five feet of electrical cord.  A night
27   light above the night stand was missing approximately three
28   feet, five inches of cord.  The victim's name and employer

3

1    was [sic] obtained from papers found inside a briefcase type
2    purse in the room.  Auto-Trol Technology, that's A-U-T-O
3    hyphen T-R-O-L, Technology a Denver based company was
4    contacted and the victim's identity confirmed.  They were
5    informed that Jill Stott, S-T-O-T-T, the victim was in the
6    Southern California area on company business.  Officers
7    located additional papers in the purse indicating that the
8    victim had arrived in Ontario Airport on August 19, 1980 and
9    rented a silver Mercury Cougar from Hertz Rental Car Agency,
10   that's license of 255WPJ.  After search of the Holiday Inn
11   parking lot revealed that the car was not in the area, a
12   search was initiated of the Ontario International Airport
13   parking area which also proved to be unsuccessful.  A radio
14   broadcast was made describing the vehicle, and an officer
15   patrolling the parking lot at the Night Light Inn reported
16   that he had located and was maintaining surveillance on the
17   then unoccupied vehicle.  Officers of the Ontario Police
18   Department responded to the Night Light Inn and proceeded to
19   contact the motel manager who assisted in locating the room
20   in which the driver of the automobile was presently located.
21   After securing the area on either side of the defendant's
22   room he was ordered out into the parking lot by a
23   loudspeaker by the officers.  After calling approximately
24   four times, [Petitioner] exited the room.  [Petitioner] was
25   arrested and searched with the search revealing a sheathed
26   knifed [sic] on his person.  After the knife was confiscated
27   Petrich was transported to the Ontario Police Department.
28   In the process of securing [Petitioner's] room, motel room,

4

1    a brown paper grocery bag was discovered.  When an officer

2    looked inside this bag he observed a portion of a semi

3    automatic pistol with no grips.  A search of the bag

4    revealed that it contained a knotted pair of panty hose, a

5    continental Airlines ticketholder/boarding pass, a Hertz

6    Rental Car Folder with the name of Stott on the outside,

7    yellow coated lamp cord, a busto (phonetic) semi automatic

8    small caliber pistol without grips, a room key from Holiday

9    Inn room 259 and a brown woman's wallet.  Numerous credit

10   cards and a California driver's license bearing the name of

11   the victim were inside her wallet. . . .

12

13        [Petitioner] stated that he was hitchhiking and the

14   victim picked him up.  He claims that she asked him if he

15   would go to her motel room.  He went with her, and they had

16   sex.  At this time he was asked if he had raped her and he

17   denied it.  He stated they had an argument.  When asked

18   about what they argued about he replied she accused him of

19   raping her.  He was then [asked] why she would make such a

20   statement.  He stated, "I don't know.  I don't understand

21   women, and I shot her."  [Petitioner] was asked why he shot

22   her.  He then replied, "I don't know."  When this answer was

23   unacceptable his response was then, "There was no reason for

24   it." . . .

25

26        [Before Petitioner shot the victim]  [h]e decided to

27   bind her hands and feet and managed to locate his knife

28   which had been in his pants.  He cut the electrical cord

5

1    from one light, binding the victim's hand.  He cut the

2    electrical cord from the second light binding her feet all

3    the while managing to remain in control of her person.

4    After having bound and gagged Ms. Stott he walked outside

5    and smoked a cigarette before returning to the room and

6    placed two pillows over her head before shooting her twice

7    in the head. . . .

8

9  The victim was five foot nine, 140 pounds (H.T. 16).  She was married

10  and had a 19-month-old daughter.  Id.  Family members stated that it

11  would be extremely out of character for the victim to have picked up a

12  strange hitchhiker for sex after arriving at the Ontario Airport on

13  business.  Id.  According to the probation officer's report:

14

15    [Petitioner] is a five-foot-two, unattractive transient and

16    asked the courts to believe that he was picked up by a five-

17    foot-nine extremely attractive woman for the sole purpose of

18    engaging in sexual relations with him.  [According to

19    Petitioner's version of events] [t]his extremely cautious

20    woman also failed to notice and apparently observe a

21    sheathed knife and a gun possessed by [Petitioner].

22

23  (H.T. 66).

24

25    According to the records before the Board, Petitioner previously

26  had been arrested once for disorderly conduct and three times for DUI

27  (H.T. 16).  Petitioner also previously had been charged with the rape

28  of a 15 year old, but the father of the alleged victim had asked that

1  the charges be dropped (H.T. 16-17).  Reportedly, Petitioner's father

2  was physically abusive and Petitioner left home as soon as possible

3  (H.T. 17).

4

5      Petitioner has received two 115 disciplinary violations, the

6  first for threatening an inmate and the second for contraband (H.T.

7  18).  He has also received two 128's (H.T. 18).[1]

8

9      Petitioner has received favorable performance reports from work

10  he has done in prison (H.T. 20-22).  This work has included shoe

11  factory machine repair and work in the knitting mill (H.T. 20-22).

12

13      While in prison, Petitioner has not participated in AA, NA, or

14  any kind of self-help (H.T. 23, 47).  According to Petitioner, he does

15  not believe in using drugs.  He says he tried marijuana when he was

16  18, but has not used marijuana since then (H.T. 26).

17

18      According to a psychological report, Petitioner would not share

19  with the psychiatrist any thoughts concerning the Petitioner's

20  criminal actions or insights into the causal factors associated with

21  the murder (R.T. 28).  The psychiatrist reported that Petitioner

22  "expressed no remorse for his actions or empathy for the victim" (H.T.

23  _____

24      [1]    A "115 disciplinary violation" refers to the California
        Department of Corrections Form 115, Rules Violation Report.  The
25  form is used "[w]hen misconduct is believed to be a violation of
        law or is not minor in nature."  Cal. Code Regs., tit. 15,
26  § 3312(a)(3) (2010).  A "128" refers to the California Department
        of Corrections Form 128-A, Custodian Counseling Chrono.  The form
27  is used "[w]hen similar minor misconduct recurs after verbal
        counseling or if documentation of minor misconduct is needed."
28  Cal. Code Regs., tit. 15, § 3312(a)(2) (2010).

7

1  29).   Petitioner conceded to the psychiatrist that, prior to being

2  incarcerated, Petitioner was impulsive and had an anger control

3  problem (H.T. 29).   The psychiatrist assessed a "low moderate" risk

4  for violence in the free community.   Id.

5

6      With regard to parole plans, Petitioner reportedly enjoys the

7  support of relatives, but these relatives live in states other than

8  California (H.T. 35-43).   As yet, Petitioner has no firm, documented

9  parole plans within California (H.T. 35-43).

10

11      A deputy district attorney and relatives of the victim opposed

12  parole (H.T. 44-57).   Petitioner claimed that he has thought about the

13  crime over the years and "realized that I did it wrong, that I

14  shouldn't do it anymore . . .  I changed my ways.  I've matured.   I am

15  very sorry for what is happened [sic]" (H.T. 47, 57).

16

17  II.   **The Board's Decision**

18

19      The Board deemed Petitioner unsuitable for parole, based on

20  factors including:   the commitment offense (which the Board

21  characterized as "cruel," "calculated," "atrocious," and the product

22  of a "depraved heart"); Petitioner's prior criminal record;

23  Petitioner's unstable social history; Petitioner's efforts to minimize

24  his wrongdoing; Petitioner's lack of insight into the crime;

25  Petitioner's failure to engage in self-help or other therapy while in

26  prison; and Petitioner's lack of firm parole plans in California (H.T.

27  65-75).   The Board denied parole for ten years (H.T. 73).

28  ///

1
**PETITIONER'S CONTENTIONS**

2

3      Petitioner contends:

4

5      1.   The Board's finding of parole unsuitability violated

6  Petitioner's constitutional rights;

7

8      2.   The state courts' alleged failure fully to adjudicate the

9  issues raised in Petitioner's habeas corpus petitions allegedly

10  violated Petitioner's constitutional rights; and

11

12      3.   Retroactive application of the 2008 amendment to California

13  Penal Code 3041.5 allegedly violates the constitutional prohibition

14  against *ex post facto* laws.

15

16
**STANDARD OF REVIEW**

17

18      A federal court may not grant an application for writ of habeas

19  corpus on behalf of a person in state custody with respect to any

20  claim that was adjudicated on the merits in state court proceedings

21  unless the adjudication of the claim: (1) "resulted in a decision that

22  was contrary to, or involved an unreasonable application of, clearly

23  established Federal law, as determined by the Supreme Court of the

24  United States"; or (2) "resulted in a decision that was based on an

25  unreasonable determination of the facts in light of the evidence

26  presented in the State court proceeding."  28 U.S.C. § 2254(d);

27  Woodford v. Visciotti, 537 U.S. 19, 24-26 (2002); Early v. Packer, 537

28  U.S. 3, 8 (2002); Williams v. Taylor, 529 U.S. 362, 405-09 (2000).

1    "Clearly established Federal law" refers to the governing legal

2    principle or principles set forth by the Supreme Court at the time the

3    state court renders its decision.  Lockyer v. Andrade, 538 U.S. 63

4    (2003).  A state court's decision is "contrary to" clearly established

5    Federal law if: (1) it applies a rule that contradicts governing

6    Supreme Court law; or (2) it "confronts a set of facts. . . materially

7    indistinguishable" from a decision of the Supreme Court but reaches a

8    different result.  See Early v. Packer, 537 U.S. at 8 (citation

9    omitted); Williams v. Taylor, 529 U.S. at 405-06.

10

11   Under the "unreasonable application prong" of section 2254(d)(1),

12   a federal court may grant habeas relief "based on the application of a

13   governing legal principle to a set of facts different from those of

14   the case in which the principle was announced."  Lockyer v. Andrade,

15   538 U.S. at 76 (citation omitted); see also Woodford v. Visciotti, 537

16   U.S. at 24-26 (state court decision "involves an unreasonable

17   application" of clearly established federal law if it identifies the

18   correct governing Supreme Court law but unreasonably applies the law

19   to the facts).  A state court's decision "involves an unreasonable

20   application of [Supreme Court] precedent if the state court either

21   unreasonably extends a legal principle from [Supreme Court] precedent

22   to a new context where it should not apply, or unreasonably refuses to

23   extend that principle to a new context where it should apply."

24   Williams v. Taylor, 529 U.S. at 407 (citation omitted).

25

26   "In order for a federal court to find a state court's application

27   of [Supreme Court] precedent 'unreasonable,' the state court's

28   decision must have been more than incorrect or erroneous."  Wiggins v.

10

1  <u>Smith</u>, 539 U.S. 510, 520 (2003) (citation omitted).  "The state

2  court's application must have been 'objectively unreasonable.'"  <u>Id.</u>

3  at 520-21 (citation omitted); <u>see also</u> <u>Clark v. Murphy</u>, 331 F.3d 1062,

4  1068 (9th Cir.), <u>cert. denied</u>, 540 U.S. 968 (2003).  In applying these

5  standards, this Court looks to the last reasoned state court decision.

6  <u>See</u> <u>Delgadillo v. Woodford</u>, 527 F.3d 919, 925 (9th Cir. 2008).

7

8                           **DISCUSSION**[2]

9

10  **I.    Governing Legal Standards**

11

12       "There is no constitutional or inherent right of a convicted

13  person to be conditionally released before the expiration of a

14  valid sentence." <u>Greenholtz v. Inmates of Nebraska Penal and</u>

15  <u>Correctional Complex</u>, 442 U.S. 1, 7 (1979) ("<u>Greenholtz</u>").  In some

16  instances, however, state statutes may create liberty interests in

17  parole release entitled to protection under the federal Due Process

18  clause.  <u>See</u> <u>Bd. of Pardons v. Allen</u>, 482 U.S. 369, 371 (1987);

19  <u>Greenholtz</u>, 442 U.S. at 12.  "If there is any right to release on

20  parole, or to release in the absence of some evidence of future

21  dangerousness, it has to arise from substantive state law creating a

22  right to release." <u>Hayward v. Marshall</u>, 603 F.3d 546, 555 (9th Cir.

23  2010) (en banc) ("<u>Hayward</u>").

24  ///

25  ///

26  _____

27       [2]     The Court has considered and rejected each of
Petitioner's arguments.  The Court discusses Petitioner's
28  principal arguments herein.

                                11

1    Section 3041(b) of the California Penal Code provides, in
2  pertinent part:

3

4         The panel or the board . . . shall set a release date unless
5         it determines that the gravity of the current convicted
6         offense or offenses, or the timing and gravity of current or
7         past convicted offense or offenses, is such that
8         consideration of the public safety requires a more lengthy
9         period of incarceration for this individual, and that a
10        parole date, therefore, cannot be fixed at this meeting.

11

12    Under applicable state regulations, "[r]egardless of the length
13  of time served, a life prisoner shall be found unsuitable for and
14  denied parole if in the judgment of the [Board] the prisoner will pose
15  an unreasonable risk of danger to society if released from prison."
16  Cal. Code Regs., tit. 15, § 2402(a) (2010).   In determining
17  suitability for parole, the Board shall consider "[a]ll relevant,
18  reliable information available."   Cal. Code Regs., tit. 15, § 2402(b)
19  (2010).   The Board may consider, inter alia, "the circumstances of the
20  prisoner's social history; past and present mental state; past
21  criminal history, including involvement in other criminal misconduct
22  which is reliably documented; the base and other commitment offenses,
23  including behavior before, during and after the crime; past and
24  present attitude toward the crime; any conditions of treatment or
25  control, including the use of special conditions under which the
26  prisoner may safely be released to the community; and any other
27  information which bears on the prisoner's suitability for release."
28  See Cal. Code Regs., tit. 15, § 2402(b) (2010).   The state regulations

1    enumerate certain circumstances tending to show unsuitability or

2    suitability for release, described as "general guidelines," but also

3    indicate that the importance of any circumstance or combination of

4    circumstances in a particular case is left to the judgment of the

5    Board.   See Cal. Code Regs., tit. 15, § 2402(c) (2010).

6

7         Circumstances tending to show unsuitability include:

8

9         (1) Commitment Offense.   The prisoner committed the offense

10        in an especially heinous, atrocious or cruel manner.   The

11        factors to be considered include:

12

13        (A) Multiple victims were attacked, injured or killed in the

14        same or separate incidents.

15

16        (B) The offense was carried out in a dispassionate and

17        calculated manner, such as an execution-style murder.

18

19        (C) The victim was abused, defiled or mutilated during or

20        after the offense.

21

22        (D) The offense was carried out in a manner which

23        demonstrates an exceptionally callous disregard for human

24        suffering.

25

26        (E) The motive for the crime is inexplicable or very trivial

27        in relation to the offense.

28   ///

13

1    (2) Previous Record of Violence.  The prisoner on previous

2    occasions inflicted or attempted to inflict serious injury

3    on a victim, particularly if the prisoner demonstrated

4    serious assaultive behavior at an early age.

5

6    (3) Unstable Social History.  The prisoner has a history of

7    unstable or tumultuous relationships with others.

8

9    (4) Sadistic Sexual Offenses.  The prisoner has previously

10    sexually assaulted another in a manner calculated to inflict

11    unusual pain or fear upon the victim.

12

13    (5) Psychological Factors.  The prisoner has a lengthy

14    history of severe mental problems related to the offense.

15

16    (6) Institutional Behavior.  The prisoner has engaged in

17    serious misconduct in prison or jail.

18

19  Cal. Code Regs., tit. 15, § 2402(c) (2010).

20

21    Circumstances tending to indicate suitability include:

22

23    (1) No Juvenile Record.  The prisoner does not have a record

24    of assaulting others as a juvenile or committing crimes with

25    a potential of personal harm to victims.

26

27    (2) Stable Social History.  The prisoner has experienced

28    reasonably stable relationships with others.

(3) Signs of Remorse.  The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for Crime.  The prisoner committed his crime as the result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome.  At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

(6) Lack of Criminal History.  The prisoner lacks any significant history of violent crime.

(7) Age.  The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future.  The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(9) Institutional Behavior.  Institutional activities indicate an enhanced ability to function within the law upon release.

1   Cal. Code Regs., tit. 15, § 2402(d) (2010).

2

3       Upon a finding of suitability, the Board sets a "base term"

4   established solely on the gravity of the base crime, using a matrix of

5   base terms set forth in California Code of Regulations section 2403.

6   See Cal. Code Regs., tit. 15, § 2403(a) (2010).

7

8       State authorities' discretion in parole matters is "great" and

9   "involves the deliberate assessment of a wide variety of

10  individualized factors on a case-by-case basis, and the striking of a

11  balance between the interests of the inmate and the public." In re

12  Powell, 45 Cal. 3d 894, 902, 248 Cal. Rptr. 431, 755 P.2d 881 (1988)

13  (internal quotations and citation omitted).

14

15      Prior to Hayward, the Ninth Circuit had held that federal Due

16  Process required that a state finding of parole unsuitability be

17  supported by "some evidence," in accordance with the standard set

18  forth in Superintendent v. Hill, 472 U.S. 445, 455 (1985). See Irons

19  v. Carey, 505 F.3d 846, 851 (9th Cir. 2007); Sass v. Calif. Bd. of

20  Prison Terms, 461 F.3d 1123, 1128-29 (9th Cir. 2006). The California

21  Supreme Court, applying state law, also has required that there exist

22  "some evidence" to support a finding of parole unsuitability. See In

23  re Lawrence, 44 Cal. 4th 1181, 1204, 82 Cal. Rptr. 3d 169, 190 P.3d

24  535 (2008) ("Lawrence"); In re Shaputis, 44 Cal. 4th 1241, 1254, 82

25  Cal. Rptr. 3d 213, 190 P.3d 573 (2008) ("Shaputis"); In re

26  Rosenkrantz, 29 Cal. 4th 616, 658 & n.12, 128 Cal. Rptr. 2d 104, 59

27  P.3d 174 (2002), cert. denied, 538 U.S. 980 (2003) ("Rosenkrantz"); In

28  re Powell, 45 Cal. 3d at 904.

1    In Hayward, the Ninth Circuit held that, "in the absence of state
2    law establishing otherwise, there is no federal constitutional
3    requirement that parole be granted in the absence of 'some evidence'
4    of future dangerousness. . . ." Hayward, 603 F.3d at 561.  The
5    Hayward Court suggested that a federal Due Process liberty interest
6    might arise when state law establishes such a requirement.  Id.
7    Ultimately, however, the Hayward Court stated that it did not need to
8    decide whether a federal Due Process liberty interest arises because
9    of California law's requirement that parole be granted in the absence
10   of "some evidence" of future dangerousness.  Id. at 562.  The Hayward
11   Court stated that it did not need to decide this issue given the fact
12   that California's "some evidence" requirement is "exactly the same" as
13   the requirement previously applied in pre-Hayward Ninth Circuit case
14   law.  Id. (citing Lawrence and Shaputis).  Therefore, in a habeas case
15   challenging a finding of parole unsuitability in California, the
16   federal district court "need only decide whether the California
17   judicial decision [upholding the finding] was an 'unreasonable
18   application' of the California 'some evidence' requirement, or was
19   'based on an unreasonable determination of the facts in light of the
20   evidence.'" Hayward, 603 F.3d at 562-63 (citing 28 U.S.C. §§
21   2254(d)(1), (2)); but cf. Haggard v. Curry, ___ F.3d ___, 2010 WL
22   4978842, at *4 (9th Cir. Dec. 9, 2010) (stating that Hayward held
23   "that the procedural protection afforded to parole applicants by
24   California's 'some evidence' standard is part of the state-created
25   liberty interest in parole that is protected by the federal Due
26   Process Clause") (citations omitted); Pirtle v. California Board of
27   Prison Terms, 611 F.3d 1015, 1020 (9th Cir. 2010) ("California's
28   parole scheme gives rise to a cognizable liberty interest in release

1  on parole") (citations and quotations omitted); <u>Cooke v. Solis</u>, 606

2  F.3d 1206, 1213 (9th Cir. 2010), <u>petition for certiorari filed</u>, 79

3  U.S.L.W. 3141 (Sept. 2, 2010) (appearing to state that California's

4  "some evidence" standard creates a "federally enforceable liberty

5  interest"); <u>Pearson v. Muntz</u>, 606 F.3d 606, 609 (9th Cir. 2010) ("By

6  holding that a federal habeas court may review the reasonableness of

7  the state court's application of the California 'some evidence' rule,

8  <u>Hayward</u> necessarily held that compliance with the state requirement is

9  mandated by federal law, specifically the Due Process Clause").

10

11      Under the California "some evidence" requirement, the issue is

12  not whether the evidence supported any particular factor regarding

13  parole unsuitability, but rather whether "some evidence" indicates

14  that the prisoner's release unreasonably would endanger public safety.

15  <u>Lawrence</u>, 44 Cal. 4th at 1212 ("the relevant inquiry is whether some

16  evidence supports the <i>decision</i> of the Board . . . that the inmate

17  constitutes a current threat to public safety, and not merely whether

18  some evidence confirms the existence of certain factual findings")

19  (citations omitted; original emphasis).  "Only a modicum of evidence

20  is required."  <u>Rosenkrantz</u>, 29 Cal. 4th at 677.  "Resolution of any

21  conflicts in the evidence and the weight to be given the evidence are

22  matters within the authority of the [Board]."  The Board's decision

23  "must reflect an individualized consideration of the specified

24  criteria and cannot be arbitrary or capricious."  <u>Id.</u>  "It is

25  irrelevant that a court might determine that evidence in the record

26  tending to establish suitability for parole far outweighs evidence

27  demonstrating unsuitability for parole."  <u>Id.</u>

28  ///

1  II.   "Some Evidence" Supported the Board's Decision.

2

3       In a habeas petition filed in the San Bernardino Superior Court,

4  Petitioner challenged the sufficiency of the evidence to support the

5  Board's decision.   The Superior Court rejected this challenge,

6  determining that the evidence before the Board supplied "more than

7  'some evidence'" to support the Board's decision (Lodgment 4 at 4-5).

8  The Superior Court cited in particular the nature of the commitment

9  offense, Petitioner's prison disciplinary record, his lack of viable

10  parole plans within California, and his lack of remorse for his

11  actions or empathy for the victim.   Id.

12

13       The Superior Court's determination was not unreasonable.

14  Evidence before the Board constituted at least "some evidence"

15  supporting the Board's decision that Petitioner was unsuitable for

16  parole.   See Hayward at 562-63 (commitment offense and "somewhat

17  unfavorable psychologist and counselor reports" showing petitioner

18  could pose a "low to moderate" risk of violence if released

19  sufficient); Wauls v. Muntz, 256 Fed. App'x 106, 107 (9th Cir. 2007)

20  (nature of commitment offense, criminal history, and disciplinary

21  history sufficient); Hernandez v. Perez, 256 Fed. App'x 108, 109 (9th

22  Cir. 2007) (commitment offense and prison disciplinary record);

23  Jackson v. Carey, 244 Fed. App'x 133, 134 (9th Cir. 2007) (commitment

24  offense, inadequate parole plans and failure to participate adequately

25  in self-help programs such as Alcoholics Anonymous); Perez v. Clark,

26  2010 WL 3768127, at *7 (E.D. Cal. Sept. 22, 2010) (commitment offense,

27  lack of insight and limited programming); Redwood v. Davison, 2010 WL

28  2635774, at *7 (C.D. Cal. May 19, 2010), adopted, 2010 WL 2635776

1 (C.D. Cal. June 23, 2010) (commitment offense and "poor institutional

2 behavior"); Gray v. Finn, 2010 WL 1729954, at *1 (E.D. Cal. Apr. 28,

3 2010) (commitment offense, criminal history and prison disciplinary

4 history); Bankston v. Curry, 2010 WL 1260199, at *7 (N.D. Cal.

5 Mar. 30, 2010) (prisoner's insistence that murder of his fiancé was an

6 accident, despite contrary physical evidence, alone provided some

7 evidence to show prisoner posed an unreasonable risk of danger to the

8 community); Hansen v. Hornbeak, 2009 WL 4136544, at *7 (E.D. Cal.

9 Nov. 23, 2009), adopted, 2010 WL 935579 (E.D. Cal. Jan 6, 2010)

10 (commitment offense and lack of insight); Martin v. Ornoski, 2008 WL

11 1808517, at *3-5 (N.D. Cal. Apr. 22, 2008) (commitment offense and

12 prison disciplinary history); In Re Cerny, 178 Cal. App. 4th 1303,

13 1315-16, 101 Cal. Rptr. 3d 200 (2009) (lack of firm, verifiable parole

14 plans).

15

16     Petitioner may contend that the Board should have weighed more

17 heavily arguably positive factors.  However, this Court cannot reweigh

18 the factors supporting parole suitability and the factors supporting

19 parole unsuitability.  See Shaputis, 44 Cal. 4th at 1260-61 (although

20 it might be reasonable to conclude that petitioner's many years of

21 sobriety, advanced age and health problems suggested he would never

22 again consume alcohol and engage in criminal conduct, court cannot

23 reweigh the evidence as long as the record shows "*due consideration of*

24 *the specified factors* as applied to the individual prisoner in

25 accordance with applicable legal standards") (original emphasis);

26 Rosenkrantz, 29 Cal. 4th at 677; see also Chichil v. Kane, 255 Fed.

27 App'x 194, 194 (9th Cir. 2007) ("the 'some evidence' standard does not

28 allow us to reweigh the evidence before the Board"); Crawley v.

1   <u>Knowles</u>, 235 Fed. App'x 563, 564 (9th Cir. 2007) ("The 'some evidence'

2   standard does not allow us to entertain Crawley's contentions

3   regarding how the [Board] evaluated the evidence it had before it when

4   it made its suitability determination. [citation]."). Moreover, even

5   if the Board made some insupportable findings, the Court nevertheless

6   must deny habeas relief where, as here, there exists "some evidence"

7   supporting the Board's finding of unsuitability.  <u>See</u> <u>Biggs v.</u>

8   <u>Terhune</u>, 334 F.3d 910, 916 (9th Cir. 2003), <u>overruled on other</u>

9   <u>grounds</u>, <u>Hayward v. Marshall</u>, 603 F.3d 546, 555 (9th Cir. 2010); <u>In re</u>

10  <u>Cerny</u>, 178 Cal. App. 4th 1303, 1314-15, 101 Cal. Rptr. 3d 200 (2009)

11  (although evidence did not support other findings, Board's finding

12  that petitioner's parole plans were inadequate sufficiently supported

13  unsuitability finding).

14

15       In sum, the Superior Court's determination that "some evidence"

16  supported the Board's unsuitability finding was not contrary to, or an

17  objectively unreasonable application of, any clearly established

18  Federal law as determined by the United States Supreme Court.  <u>See</u> 28

19  U.S.C. § 2254(d).

20

21  **III.  <u>The State Courts' Alleged Failure Fully to Adjudicate the Issues</u>**

22  **<u>in Petitioner's Habeas Corpus Petitions Does Not Merit Habeas</u>**

23  **<u>Relief.</u>**

24

25       Federal habeas corpus relief may be granted "only on the ground

26  that [Petitioner] is in custody in violation of the Constitution or

27  laws or treaties of the United States."  28 U.S.C. § 2254(a).  Mere

28  errors in the application of state law are not cognizable on federal

1  habeas review.  Id.; Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)

2  ("it is not the province of a federal habeas court to reexamine state-

3  court determinations on state-law questions"); accord Pulley v.

4  Harris, 465 U.S. 37, 41 (1984).  Even if there existed some procedural

5  error in the state collateral review process, federal habeas relief

6  would be unavailable to redress such error.  Ortiz v. Stewart, 149

7  F.3d 923, 939 (9th Cir. 1998), cert. denied, 526 U.S. 1123 (1999)

8  ("[T]his court has specifically stated that federal habeas relief is

9  not available to redress alleged procedural errors in state post-

10  conviction proceedings."); Franzen v. Brinkman, 877 F.2d 26, 26 (9th

11  Cir.), cert. denied, 493 U.S. 1012 (1989) (holding that allegations of

12  error in state's post-conviction review are not addressable through

13  habeas corpus proceedings).

14

15       More specifically, the summary nature of a state court's ruling

16  on a habeas corpus petition does not offend the federal constitution.

17  See, e.g., Owens v. Nool, 2010 WL 144364 (N.D. Cal. Jan. 5, 2010)

18  (dismissing habeas petitioner's claim that the California Court of

19  Appeal "erred in failing to state, in a written opinion, its reasons

20  for denying petitioner's petition"); Stewart v. Sisto, 2008 WL

21  5178835, at *1 (E.D. Cal. Dec. 10, 2008) ("there is no federal

22  constitutional prohibition preventing state courts from disposing of

23  [the petitioner's] post-conviction claims in a summary fashion.  Nor

24  is there a federal requirement that state courts consider post-

25  conviction claims with a full discussion of the merits").

26  Accordingly, the state courts' alleged failure to explain their

27  rulings more expansively cannot merit federal habeas relief.

28  ///

IV.  **Retroactive Application of the 2008 Amendment to Section 3041.5**
     **of the California Penal Code Does Not Violate the Constitutional**
     **Prohibition Against _Ex Post Facto_ Laws.**

     Prior to the 2008 amendment to section 3041.5, the Board was
required to hold a subsequent parole suitability hearing no more than
five years after the immediately preceding parole suitability hearing.
The 2008 amendment authorized the Board to lengthen this interval
to seven, ten, or even fifteen years.  See Cal. Penal Code §
3041.5(b)(3).  Contrary to Petitioner's claim, this authorization does
not violate the constitutional prohibition against _ex post facto_ laws.

     The retroactive application of a change in state parole
procedures violates _ex post facto_ only if there exists a "significant
risk" that such application will increase the punishment for the
crime.  See Garner v. Jones, 529 U.S. 244, 259 (2000).  Retroactive
application of the 2008 amendment to section 3041.5 entails no such
"significant risk."  In Gilman v. Schwarzenegger, ___ F.3d ___, 2010
WL 4925439 (9th Cir. Dec. 6, 2010), the Ninth Circuit reversed an
injunction against the retroactive application of the 2008 amendment,
finding that an _ex post facto_ challenge to the amendment was unlikely
to succeed.  The Ninth Circuit reasoned that, because the amendment
gives the Board discretion to advance parole suitability hearings
whenever circumstances warrant, the amendment does not create a
"significant risk" of prolonging prisoners' incarceration.  Id.  The
same reasoning applies in the present case.  Although the Board denied
Petitioner's parole suitability for ten years, the Board retains the
discretion to advance Petitioner's next parole suitability hearing

1  whenever circumstances warrant.   Thus, application of the challenged

2  amendment to Petitioner does not create a "significant risk" of

3  prolonging Petitioner's actual incarceration.   Accordingly,

4  Petitioner's *ex post facto* claim fails.   See id.; see also Garner v.

5  Jones, 529 U.S. at 259.

6

7                              **RECOMMENDATION**

8

9       For the foregoing reasons, IT IS RECOMMENDED that the Court issue

10  an Order: (1) approving and adopting this Report and Recommendation;

11  and (2) denying and dismissing the Petition with prejudice.

12

13       DATED: December 15, 2010.

14

15

16                              _____/S/_____

17                              CHARLES F. EICK
                                UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number.  No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.

If the District Judge enters judgment adverse to Petitioner, the District Judge will, at the same time, issue or deny a certificate of appealability.  Within twenty (20) days of the filing of this Report and Recommendation, the parties may file written arguments regarding whether a certificate of appealability should issue.